UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO

ARIEL ACOSTA ORTIZ AND MARILYN     *
HERNANDEZ, Personally and on behalf of   *
the CONJUGAL PARTNERSHIP constituted   *
by both and of THEIR MINOR AGED      *
CHILDREN MARYVELISSE ACOSTA     *
AND JOHN ANTHONY HERNANDEZ     *
  *
         Plaintiffs             *
  *
         v.                *     Civ. No. 98-2446 (PG)
  *
DEN CARIBE I, INC., d/b/a DENNY'S     *
RESTAURANTS (PUERTO RICO)      *
  *
        Defendant          *
  *
* * * * * * * * * * * * * * *

**O P I N I O N & O R D E R**

     Ariel Acosta-Ortiz ("Acosta"), his spouse Marilyn Hernandez, and their two children,

Maryvelisse Acosta and John Anthony Hernandez ("Plaintiffs"), commenced this civil action against

Den Caribe I, Inc. ("Defendant"), the former employer of Acosta. Plaintiffs alleged that Defendant

failed to comply with its duty under the Consolidated Omnibus Reconciliation Act ("COBRA"). *See*

29 U.S.C. §§ 1132, 1166. Plaintiffs also alleged causes of action under Puerto Rico's Act No. 80

(wrongful discharge act) and Act No. 17, 29 L.P.R.A. § 175. Pending before this Court is Plaintiffs

Motion for Summary Judgment on their three causes of action. (Dkt. 7) Defendant filed their Partial

Opposition to Summary Judgment in opposition to Plaintiffs' COBRA cause of action. (Dkt. 12)

AO 72A
(Rev.8/82)

Civ. No. 98-2446 (PG)                                                                        2.

Plaintiffs allege jurisdiction on both federal question and diversity of citizenship, 28 U.S.C. §§

1331-1332, and supplemental jurisdiction over Plaintiffs' state law claims based upon 28 U.S.C. §

1367(a).

## LOCAL RULE 311.12

Defendant failed to file a response to Plaintiffs' Statement of Uncontested Material Facts in

Support of their Motion for Summary Judgment, contrary to the clear requirements of Local Rule

311.12. (Dkt. 7); Local Rule 311.12. It is well-settled law that failure to comply with Local Rule

311.12 may result in the admission of the moving party's list of uncontroverted facts. *See Tavarez v.*

*Champion Products, Inc.*, 903 F. Supp. 268, 270 (D.P.R. 1995). Local Rule 311.12 has the force of law

and is binding upon the parties. *See* FED. R. CIV. P. 83; WRIGHT & MILLER, FEDERAL PRACTICE AND

PROCEDURE § 3153, at 224 (1st ed. 1973).

It is a bedrock principal that procedural rules are not to be taken lightly. As the Court of

Appeals for the First Circuit described:

> Procedural rules are important for two reasons. One reason is that rules ensure fairness
> and orderliness. They ensure fairness by providing litigants with a level playing field.
> They ensure orderliness by providing courts with a means for the efficient
> administration of crowded dockets. In both these respects rules facilitate the tri-
> cornered communications that link the opposing parties with each other and with the
> court.
>     The second overarching reason why procedural rules are important has a
> functional orientation: rules establish a framework that helps courts to assemble the raw
> material that is essential for forging enlightened decisions.

*Reyes-García, et al. v. Rodríguez & Del Valle, Inc.*, 82 F.3d 11, 14 (1st Cir. 1996). With these purposes

in mind, the Court reminds Defendants that

> rules are not mere annoyances, to be swatted aside like so many flies, but, rather, that
> rules lie near the epicenter of the judicial process. . . . No one is perfect, and occasional

Civ. No. 98-2446 (PG)                                                                                3.

> oversights–fribbling infringements of the rules that neither create unfairness to one's adversary nor impair the court's ability to comprehend and scrutinize a party's submissions–ordinarily will not warrant Draconian consequences. But major infractions or patterns of repeated inattention warrant severe decrees. "In the long run, . . . strict adherence to . . . procedural requirements . . . is the best guarantee of evenhanded administration of the law." *Mohasco Corp. v. Silver*, 477 U.S. 807, 826 . . . (1980).

*Id.* at 15.

> Local Rule 311.12 is clear in both its requirements and its importance.

> [T]he importance of this rule [is] to "lay[ ] out the material facts in dispute clearly for a district court that is swamped with an overwhelming number of civil and criminal dispositive motions." *Dominguez v. Eli Lilly and Co.*, 958 F.Supp. 721, 727 (D.P.R.1997), *aff'd by* 141 F.3d 1149 (1st Cir. 1998). "Without such a rule, the Court would have to search through the record, with or without the assistance of counsel, for lurking evidence of a genuine issue of material fact. Local Rule 311.12 prevents 'the recurrent problem of ferreting through the record' and 'the specter of district judges being unfairly sandbagged by unadvertised factual issues.'" *Id.* (quoting *Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 920-31 (1st Cir.1983) (internal citations omitted))."

*Rodriguez v. Puerto Rico Marine Mgmt., Inc.*, 975 F. Supp. 115, 117-18 (D.P.R. 1997).

Plaintiffs' Statement of Uncontested Facts is therefore deemed admitted. "[W]hen the nonmovant party fails to annex a short, concise statement of material facts in its opposing motion, the movant's statement of contested facts is uncontroverted and deemed admitted. This procedural defect shackles the nonmoving party to the moving party's portrayal of the events. Although this omission does not signify an automatic defeat, it launches the nonmovant's case down the road toward an early dismissal." *Tavarez v. Champion Prods., Inc.*, 903 F. Supp. at 270.

Civ. No. 98-2446 (PG)                                                                                      4.


## FACTS

Acosta began work with Denny's Restaurants in September of 1991 as a waiter. He was promoted to assistant manager in October of 1996. In January of 1997 he was promoted to Manager of Denny's Restaurant in Bayamón and he was later transferred between several Denny's, always as Manager. (Dkt.7, exh. 1) Denny's fired Acosta on August 19, 1998.


A.    Ariel Acosta-Ortiz

On July 23, 1998, Acosta was transferred to Denny's Rio Piedras restaurant, where Acosta's supervisor was Mr. Aníbal Román-Rodríguez.[1] At the Rio Piedras Denny's, Acosta supervised between 70 and 100 employees, including assistant managers Raúl Castro and Pedro Negrón. (Dkt. 7, exh. 1)

Denny's Rio Piedras restaurant offered a lobster meal special on August 7, 1998. (Dkt. 7, exh. 8) Though Acosta was not scheduled to work, he went to the restaurant that day. (Dkt. 7, exh. 8) The next afternoon, after working a full day (6:00 a.m. until 3:00 p.m.), Acosta received a call from Negrón informing him that four deposit envelopes were missing from the safe.[2] Acosta investigated the disappearance of the envelopes, obtaining written statements from Castro and cashier Moraima Santiago. (Dkt. 7, exhs. 12-14) Acosta then sent a letter to Román informing him about the missing deposits and requesting instructions on how to proceed. (Dkt. 7, exh. 15)

---

[1] Román was a District Manager for Denny's Restaurants.

[2] The restaurant's policy is that every time a sales register has $200.00 in cash, the manager or assistant manager goes to the cashier, takes the money, puts it in a sealed envelope with the cashier watching, both the cashier and manager/assistant manager fill out and sign a form, the manager/assistant manager drops it into a slot of the safe. Later security officers from American Rangers pick it up from the safe. (Dkt. 7, exhs. 1, 9)

Civ. No. 98-2446 (PG)                                                                                         5.

Almost two weeks later, Carlos Alvarez, Director of Operation, informed Janet Resto, Director of Human Resources Department, that four deposit envelopes were missing from the Rio Piedras' restaurant. (Dkt. 7, exh. 9) Resto went to the site on August 19, 1997 to conduct an investigation. She interviewed several employees in a booth in the serving area. (Dkt. 7, exh. 9 at 18) Later that same afternoon, Resto informed Acosta he was fired.

Only Acosta was fired over the incident with the envelopes. Denny's did not fire Castro, Santiago, or Román. Resto did not interview Román, nor did she inform him about Acosta's firing until after the fact. (Dkt. 7, exh. 8) Román was later told that Acosta had been fired due to certain operational deficiencies with the management of funds. Denny's took $386.00 from Acosta's last paycheck, without Acosta's approval or authorization, in restitution for the missing envelopes. (Dkt. 7, exhs. 9-10) That decision was made by the Operations department. (Dkt. 7, exh. 9)

Acosta never handled the envelopes and Defendant does not accuse Acosta of stealing any money or in any way orchestrating its (purposeful) disappearance. The company's position is clearly that Acosta was responsible as a supervisor regardless of his actual guilt and his firing is justified therefore from his poor(or perhaps negligent) administration or managing and is thus somewhat removed from the envelopes disappearing. (Dkt. 7, exh. 9) The prior manager at the Rio Piedras restaurant also did not follow procedures. He was not fired; he was transferred to the Denny's restaurant in Ponce. (Dkt. 7, exh. 9) At the time of his firing, Acosta salary was $13.75 an hour. (Dkt. 7, exh. 10)

Civ. No. 98-2446 (PG)                                                                           6.

B.     Den Caribe I, Inc., Den Caribbean, Inc., Denny's

Den Caribe I, Inc. ("Den Caribe") held the franchise rights to Denny's Restaurants in Puerto

Rico until (Dkt. 7, exh. 1) they filed a petition for bankruptcy under Chapter 11 (reorganization) in the

United States Bankruptcy Court for the District of Puerto Rico on July 2, 1997. (Dkt. 7, exh. 3) Den

Caribbean, Inc. ("Den Caribbean") was incorporated pursuant to the laws of the Commonwealth of

Puerto Rico (with Puerto Rico as it's principal place of business) on August 25, 1998. (Dkt. 7, exhs.

5-6) On August 26, 1998, a Third Amended Joint Plan of Reorganization under Chapter 11 was filed

and on December 4, 1998, the Bankruptcy Court issued an order confirming the plan. (Dkt. 7, exhs.

4-4A) Six of the nine general managers for Den Caribe remained with Den Caribbean. (Dkt. 7, exh.

8 at 22-23)

Den Caribbean is the current franchise holder of Denny's Restaurants in Puerto Rico. (Dkt. 7,

exhs. 7-8) Den Caribbean continued operating the nine Denny's Restaurants in Puerto Rico under the

same franchise agreement signed July 11, 1995 between Denny's, Inc. and Den Caribe. (Dkt. 7, exhs.

7-8). The same employees worked for first Den Caribe and then Den Caribbean. (Dkt. 7, exhs. 8-9)

Den Caribbean kept the same central office, (Dkt. 7, exhs. 7-8), and offered the same medical plan and

paid severance indemnification to (at least) one employee who had been hired by Den Caribe. (Dkt.

7, exh. 9) To summarize, the companies swapped names and owners, but the day-to-day operators and

operations remained nearly identical.

Civ. No. 98-2446 (PG)                                                                 7.

C.    COBRA

Acosta participated in and was a beneficiary of a group health insurance plan offered to employees of Denny's. (Dkt. 7, exhs. 1, 16)  Co-plaintiffs Marilyn Hernández, Maryvelisse Acosta-Hernández, and John Anthony Hernández were beneficiaries of the plan, as well.  Defendant did not comply with COBRA's notification requirements.   Plaintiffs lost their coverage as a result of Defendant's failure.

## SUMMARY JUDGMENT STANDARD

Summary judgment is "a means of avoiding full-dress trials in unwinnable cases, thereby freeing courts to utilize scarce judicial resources in more beneficial ways." *Messnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991), *cert. denied*, 504 U.S. 985 (1992).  In essence, summary judgment should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED R. CIV. P. 56(c).  *See also Celotex Corp. v. Cattret*, 477 U.S. 317, 322 (1986).  Therefore, the trial court must go beyond the façade of the pleadings, and "assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir. 1992), *cert. denied*, 507 U.S. 1030 (1993).  Throughout the court's analysis, "the entire record [must be seen] in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990). *See also Mullin v. Raytheon Co.*, 164

Civ. No. 98-2446 (PG)                                                                                8.

F.3d 696, 698 (1ˢᵗ Cir. 1999), *reh'g denied by* 171 F.3d 710 (1ˢᵗ Cir. 1999), *cert. denied* __ U.S. __, 120

S. Ct. 44 (1999); *Maldonado-Denis v. Castillo-Rodríguez*, 23 F. 3d 576, 581 (1ˢᵗ Cir. 1994).

     In order to prevail on a motion for summary judgment, the moving party first must make a

preliminary showing that there is no genuine issue of material fact which requires resolution at trial.

*See Cadle Co. v Hayes*, 116 F.3d 957, 960 (1ˢᵗ Cir. 1997).  Once the moving party has properly

supported it's motion, "the burden shifts to the nonmovant to demonstrate, through specific facts, that

a trialworthy issue remains." *Id. See also Borschow Hosp. & Med. Supplies, Inc. v. Cesar Castillo,

Inc.*, 96 F.3d 10, 14 (1ˢᵗ Cir. 1996).


                                    **LEGAL DISCUSSION**

     Plaintiffs present three issues.  Their first allegation is that the Defendant failed to comply with

COBRA's notice requirements. *See* 29 U.S.C. § 1166.  Plaintiffs' second cause of action is based upon

Puerto Rico's wrongful discharge statute, Act No. 80, 29 L.P.R.A. § 185a, et seq, and alleges that

Denny's wrongfully discharged Acosta.  Plaintiffs' third cause of action alleges that Defendant made

an unauthorized deduction from Acosta in contravention of Act. No. 17. *See* 29 L.P.R.A. § 175.


A.     COBRA

     COBRA imposes a statutory duty on a plan administrator to notify "any qualified beneficiary"

of his or her right to continue health insurance coverage for up to eighteen months following a

"qualifying event." *See* 29 U.S.C. §§ 1166 (a)(4), 1162, & 1163.  All of the plaintiffs were qualified

beneficiaries in this case. *See* 29 U.S.C. § 1167 (3)(A) & (B) (including in the definition of "qualified

Civ. No. 98-2446 (PG)                                                                                    9.

beneficiary" employee that is terminated, other than for gross misconduct, his or her spouse and his or

her dependent children).  Failure to comply with the notice requirements of § 1166 allows the Court

to subject Defendant to damages "in the amount of up to $100 a day from the date of such failure." 29

U.S.C. § 1132.  The Court, in its discretion, may also award Plaintiffs "such relief as it deems proper."

*Id.*

Defendant openly admits that it failed to notify Plaintiffs under § 1166. (Dkt. 12)  In admitting

its guilt, Defendant argues that the Court must take Defendant's good faith into consideration in

imposing statutory penalties under § 1132 (c).  (Dkt. 12)  Defendant cites *Rodríguez-Abreu v. Chase

Manhattan Bank, N.A.*, 986 F.2d 580, 586 (1st Cir. 1993), as support for not imposing a fine.  However,

*Rodríguez-Abreu* merely reaffirms the principles that prejudice and bad faith are not prerequisites for

the imposition of penalties and that the court has broad discretion in its application of § 1132.  Also,

Defendant misconstrues the use of the term good faith.  That term refers not to Defendant's mental state,

but rather to its physical attempts to give notice. *See Keegan v. Bloomingdale's, Inc.*, 992 F. Supp. 974,

978 (N.D. Ill. 1998).  Here, Defendant made no good faith attempt to provide notice in this case.  As

Defendant admits, "due to an administrative oversight, [we] failed to comply with COBRA's

notification requirements." (Dkt. 12)  The Court fails to see any good faith effort exerted by Defendant

in this case.  As Defendant themselves admit, it made an "administrative oversight."  Crying "whoops"

is not a good faith attempt or effort; allowing otherwise would undermine the purpose of the statute.

"'Prejudice is not a prerequisite to an award of civil penalties' under section 1132 (c) . . . .

Additionally, the penalty range of up to $100 per day is unrelated to any injury suffered by the plan

participant, suggesting [the] section is intended to punish noncompliance with the employer or

Civ. No. 98-2446 (PG)                                                                10.

administrator's disclosure obligations and not to compensate the participant." *Daughtrey v. Honeywell, Inc.*, 3 F.3d 1488, 1494 (11th Cir. 1993). Monetary loss is thus not a prerequisite to imposing damages. Also, the absence of bad faith no more exonerates the failure to comply with § 1132 (c) than does absence of prejudice to the plan participant. *See id.*

Defendant attempts to shield itself from its § 1132 penalties another way; Defendant argues that no notice was needed because Acosta already knew about his COBRA rights. (Dkt. 12) This is a shallow argument, and the Court refuses to dive in for fear of injury. Suffice to say, "the fact that [Acosta] knew about the right to elect coverage . . . and chose not to does not alter our analysis. An employee's knowledge of his COBRA rights does not relieve the plan administrator of its notification duties." *Mlsna v. Unitel Commu'ns, Inc.*, 41 F.3d 1124, 1129 (7th Cir. 1994). "Likewise, an employee's knowledge cannot affect his spouse's right to notification or election." *Id.*

The parties disagree over several other issues. First, the parties disagree over the length of time Defendant had to notify Plaintiffs; Plaintiffs allege fourteen days, Defendant alleges forty-four days. The second subject matter of dispute is whether notification had to be given to all of the plaintiffs individually or only to Acosta. Third, the parties debate the appropriateness of an award of emotional and mental anguish. Lastly, the parties linger over the potential award of attorney's fees.

When an employer is also the plan administrator, as is the case here, the employer/administrator has forty-four days to notify the beneficiaries of their COBRA rights.[3] *See* 29 U.S.C. § 1166 (a)(2) & (c). Because the first premium would be applied retroactively to provide continuous coverage, no harm

---

[3]The forty-four day number is computed by adding the thirty days an employer is provided to notify the plan administrator with the fourteen days that the administrator has to notify the employee of his or her right to continue coverage.

should come to the employee. *See Roberts v. National Health Corp.*, 963 F. Supp. 512, 515 (D.S.C. 1997), *aff'd by* 133 F.3d 916 (4th Cir. 1998). Of course, Defendant, regardless of having fourteen, forty-four, or four hundred days, did not provide any notice to Plaintiffs due to an "administrative oversight."

Defendant acknowledges that it did not send any notifications to the Plaintiffs, either individually or as a whole. Defendant points to *Mlsna v. Unitel Communications, Inc.* for support of its contention that notice is necessary to only Acosta. *See* 41 F.3d at 1128. Defendant's reliance on *Mlsna* is misplaced. *Mlsna* dealt with the situation where a qualifying event had not triggered an administrator's duty to notify a qualified beneficiary. *See id.* Without the qualifying event, there was no duty to notify *any* qualified beneficiary.[4] *See id.* Section 1166 (c) is clear in allowing notice to the covered spouse of an employee beneficiary to suffice as notice to all dependents residing with that spouse. Therefore, notice to Marilyn Hernández would serve as notice for the dependent children, Maryvelisse Acosta and John Anthony Hernández. *Mlsna*'s holding is inapplicable to this case because here this case contains a qualifying event. Therefore, the Court holds that Denny's had a duty to notify both Acosta and his spouse, Marilyn Hernández. Failure to provide notice constituted separate violations. One notification does not satisfy the clear requirements under COBRA.

Plaintiffs have asked for an award based upon emotional and mental anguish. The Court is unaware on what law said award would be based. There is no section in COBRA allowing for the recovery of emotional and mental anguish, at least none either party has identified or the Court has

---

[4]In his concurring opinion, Judge Cudahy disagreed with the majority's decision that a spouse is not owed a separate notice. Judge Cudahy convincingly determined that the statutory language and purpose of 29 U.S.C. §§ 1163 (2) & 1166 provide for independent notice to covered spouses and that written notice must be provided to both. *Mlsna*, 41 F.3d at 1131. Judge Cudahy also determined that notice to a covered spouse suffices as notice to dependents. *Id.* (citing 29 U.S.C. § 1166 (c)).

found.  Therefore, to the extent Plaintiffs have requested summary judgment on emotional and mental anguish under COBRA, their claim, is DISMISSED.  Furthermore, Plaintiffs have failed to provide any support for their contention beyond mere allegations.

Therefore, the Court GRANTS Plaintiffs' Motion for Summary Judgment on Defendant's failure to provide notice under COBRA.  The Court imposes a $20 per day penalty upon Defendant for each of Defendant's failures to provide notice, one for Acosta and one for his spouse.  The penalty is to be determined from October 2, 1998 (forty-four days after Acosta's termination) and will run through December 19, 1999.[5]  Therefore Plaintiffs are awarded $17,720.00 under § 1132(c).  In making its determination, the Court has considered all the evidence, along with Defendant's lack of bad faith and the lack of prejudice or actual costs to Plaintiffs.  The Court is mindful that this award may prevent Defendant from making further "administrative oversights" in the future.

Plaintiffs have also claimed that they are entitled to attorney's fees under 29 U.S.C. § 1132 (g)(1).  Section 1132 (g)(1) provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  "A prevailing plan beneficiary or participant 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Gunderson v. W.R. Grace Long Term Dis. Income Plan*, 874 F.2d 496, 500 (8th Cir. 1989) (quoting *Hechenberger v. Western Electric Co.*, 786 F.2d 347, 348 (8th Cir. 1986), *cert. denied*, 469 U.S. 1212 (1985)).  The burden is on the losing defendant to prove special circumstances exist. *See id.*  Since Defendant has

---

[5]December 19, 1999 is the date in which the beneficiaries COBRA coverage would have expired, 18 months after the qualifying event (Acosta's termination).  In choosing this date, the Court has attempted to eliminate any prejudice or privilege which would result to either party.  The Court sees no reason to punish or reward a slow-to-file plaintiff, or, at the same time, punish or reward a defendant.

Civ. No. 98-2446 (PG)                                                                                            13.

not met its burden of proving special circumstances exist, the Court orders Plaintiffs to prepare within

10 days from the date of this order a memorandum reporting their reasonable attorney's fees as to the

COBRA issue alone.  Defendant shall be provided a copy of Plaintiffs' Memorandum and have 10 days

to respond via its own Memorandum.  Neither Memorandum is to exceed five pages.


B.      SUCCESSOR LIABILITY

        The parties dispute whether Den Caribe and Den Caribbean are really one and the same.

Plaintiffs contend that Den Caribbean should be liable under a successor liability theory for the debts

or actions of Den Caribe.  In support, Plaintiffs cite both Puerto Rico and federal cases holding that a

successor employer may be held liable for the labor practices of its predecessor.

        In *Piñero v. International Air Services of Puerto Rico*, 96 J.T.S. 39, the Supreme Court of

Puerto Rico provided several factors to consider in determining successor liability:

1.    Whether the new employer had notice of the predecessor's practices and policies;
2.    The continuity of the original business operation; whether the business of both the employers is essentially the same;
3.    Use of the same corporate name;
4.    Use of the same plant, facilities and work force; whether the employees of the new Company are doing the same jobs under the same working conditions and same supervisors;
5.    Similarity of products or services;
6.    Same body of customers.

Federal courts also utilize the factors above.  *See Ed Peters Jewelry Co. v. C & J Jewelry Co.*, 124 F.3d

252, 266 (1st Cir. 1997) ("An acquiring corporation may become liable under the successor liability

doctrine for the divesting corporation's outstanding liabilities if:  (1) it expressly or impliedly assumed

the divesting entity's debts;  (2) the parties structured the asset divestiture to effect a de facto merger

Civ. No. 98-2446 (PG)                                                                                    14.

of the two corporations;  (3) the divesting corporation transferred its assets with actual fraudulent intent

to avoid, hinder, or delay its creditors;  or (4) the acquiring corporation is a "mere continuation" of the

divesting corporation."); *EEOC v. Puerto Rico Job Corps, et al.*, 729 F. Supp. 208, 218-19 (D.P.R.

1990) ("liability depends  on whether the successor had notice, whether the predecessor was capable

of providing relief, whether there has been substantial continuity of business operations, whether the

new employer uses the same facilities, employees, and management and produces the same product or

service."); *Bernstein v Consolidated Foods Corp.*, 622 F. Supp. 1096, 1108 (N.D. Ill. 1984).

Successor liability must be investigated on a case-by-case basis.  "No one of these factors is

controlling;  the court must look at all of them along with any others that present themselves in the case

before it, and it must make its decision by balancing the interests of the plaintiff and the national policy

of abhorrence toward employment discrimination against the interest of the successor.'  *Brown v.*

*Evening News Association*, 473 F.Supp. 1242, 1245 (E.D.Mich.1979)."  *EEOC v. Puerto Rico Job*

*Corps, et al.*, 729 F. Supp. at 219.  "The policy underlying the successor doctrine [is] to protect an

employee when the ownership of his employer suddenly changes." *Rojas v. TK Comm'ns, Inc.*, 87 F.3d

745, 750 (5th Cir. 1996).  Providing the employee with full relief is the "primary concern." *Bernstein*,

622 F. Supp. at 1108.

Of particular relevance in this case is the holding of *R.C.M. Executive Gallery Corp. v. Rols*

*Capital Co., et al*, 901 F. Supp. 630, 637 (S.D.N.Y. 1995), which states that "successor liability applies

to companies that obtain assets as a result of a bankruptcy proceeding." (citing *Chicago Truck Drivers,*

*Helpers and Warehouse Workers Union (Independent) Pension Fund, et al. v. Tasemkin, Inc.*, 59 F.3d

48, 51 (7th Cir. 1995)). *See also Ed Peters Jewelry Co.*, 124 F.3d at 267 (holding that a foreclosure sale does not grant an automatic exemption to an acquiring corporation from successor liability). "[U]nderlying congressional policy behind ERISA clearly favors the disregard of the corporate entity in cases where employees are denied . . . benefits." *Massachusetts Carp's Cent. Collection Agency v. Belmont Concrete Corp.*, 139 F.3d 304, 308 (1st Cir. 1998) (citation omitted).

The Court finds that Den Caribbean is the "mere continuation" of Den Caribe. The two corporations share the same employees, policies, equipment, stores, offices, benefit plans, franchise agreement and trade name.


C.    STATE LAW CLAIMS

Plaintiffs also assert two causes of action based upon the laws of the Commonwealth of Puerto Rico. Plaintiffs base their first cause of action upon Act No. 80, also known as Puerto Rico's wrongful discharge act. *See* 29 L.P.R.A. § 185a, et seq. Plaintiffs' second cause of action is alleged under Act No. 17. *See* 29 L.P.R.A. § 175.

The Court earlier granted Plaintiffs' Motion for Summary Judgment on the COBRA claim. This federal question was the straw the bound Plaintiffs' state law claims in federal court. The Court must now determine if it should retain jurisdiction over these state law claims, or dismiss them without prejudice.

Civ. No. 98-2446 (PG)                                                                              16.

1.      Supplemental Jurisdiction

Supplemental jurisdiction is a "doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). "A federal court has jurisdiction over an entire action, including state-law claims, whenever the federal-law claims and state-law claims in the case 'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'" *Cohill*, 484 U.S. at 350 (quoting *Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).[6] In determining whether to take supplemental jurisdiction, a court should take into account "considerations of judicial economy, convenience and fairness to litigants." *Gibbs*, 383 U.S. at 726; *Cohill*, 484 U.S. at 349.

Courts possess "a wide-ranging power" to decide state-law claims when federal questions are present. *See Cohill*, 484 U.S. 349. However, "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." *Id.* at 350 (quoting *Gibbs*, 383 U.S. at 726). "The exercise of supplemental jurisdiction over state-law claims is a matter purely within the discretion of the trial court." *Popular Dem. Party v. Puerto Rico*, 24 F. Supp. 2d 184, 196 (D.P.R. 1998) (J. Pérez-Giménez) (quoting *Libertad v. Welch*, 854 F. Supp. 19, 35 (D.P.R. 1993), *aff'd in part, rev'd in part by* 53 F.3d 428 (1st Cir. 1995) (not discussing supplemental jurisdiction)). Though not without limits, this discretion is broad. *See Vera-Lozano v. International Broadcasting*, 50 F.3d 67, 70 (1st cir. 1995). When the federal-law claims drop out of the lawsuit in its early stages and leave only state-law claims, "the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Cohill*, 484 U.S.

---

[6]The Court thus has expanded the scope of federal pendent jurisdiction.

Civ. No. 98-2446 (PG)                                                                                              17.

at 350 (citing *Gibbs*, 383 U.S. 726-27). *See also Popular Dem. Party*, 24 F. Supp. 2d at 196; *Libertad*, 854 F. Supp. at 35.

After examining judicial economy, convenience and fairness to the litigants, the Court declines to exercise jurisdiction over Plaintiffs' Act. No. 80 and Act No. 17 state-law claims. Plaintiffs' Motion for Summary Judgment is DENIED as to the Act No. 80 and Act. 17 causes of action, and Plaintiffs' state-law claims are hereby DISMISSED WITHOUT PREJUDICE.


## CONCLUSION

Consistent with the reasoning above, the Court GRANTS Plaintiffs' Motion for Summary Judgment as to its COBRA claim. The Court DENIES Plaintiffs' Motion for Summary Judgment as to its state-law Act No. 80 and Act No. 17 claims. Furthermore, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state-law claims, and DISMISSES WITHOUT PREJUDICE Plaintiffs' Act No. 80 and Act No. 17 causes of action.

**IT IS SO ORDERED**.

San Juan, Puerto Rico, December 2 , 1999.

                                                      *[signature]*
                                                      JUAN M. PEREZ-GIMENEZ
                                                      U. S. District Judge